# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AON CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15-cv-04980 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| JOSE LUIS CONTRERAS CABEZAS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aon Corporation ("Aon") alleges that Defendant Jose Luis Contreras Cabezas ("Contreras"), the former Chief Executive Officer, General Manager, and Chairman of the Board of two of Aon's Bolivian-based wholly-owned subsidiaries, committed fraud and breached the fiduciary duty he owed to Aon. Contreras has moved to dismiss the complaint, arguing that this Court should dismiss the case on three separate grounds: (1) pursuant to the doctrine of *forum non conveniens*, so that the case may be litigated in Bolivia; (2) because this Court lacks personal jurisdiction over Contreras; and (3) because Aon lacks prudential standing, as the claims that Aon attempts to assert do not belong to Aon but rather must be asserted by the Bolivian subsidiaries. For the reasons discussed below, the Court denies Contreras's motion to dismiss on each of the three grounds.

## BACKGROUND

For the purposes of Contreras's motion to dismiss, this Court accepts as true the following well-pleaded facts and views them in the light most favorable to Aon. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

Aon is the parent company and sole shareholder of two Bolivian-based wholly-owned subsidiaries, Aon Bolivia S.A. Corredores de Seguros ("Aon Bolivia") and Aon Re Bolivia S.A. Corredores de Reaseguros ("Aon Re Bolivia") (together, "the Bolivian Companies"). Aon formed Aon Bolivia and Aon Re Bolivia in 2001 for the purpose of conducting licensed retail insurance brokerage in Bolivia. Aon also owns 99% of Aon Consulting, a non-regulated Bolivian company that was formed in 2004 for the purpose of providing consulting services in Bolivia. Contreras, a Bolivian resident, served as Chief Executive Officer, General Manager, and Chairman of the Board of the Bolivian Companies from September 2001 until April 2014. From 2004 until April 2014, Contreras also served as General Manager of Aon Consulting pursuant to a Power of Attorney.

Between at least 2011 and 2014, Contreras misappropriated funds belonging to Aon Bolivia and Aon Re Bolivia and engaged in self-dealing with respect to the business of both companies. Specifically, in February 2012, Contreras formed and became 50% owner of Grupcor S.R.L. ("Grupcor"), a Bolivian company not associated with Aon or its subsidiaries. Contreras then misappropriated Aon Re Bolivia funds to purchase a building in La Paz, Bolivia and offices and parking spaces in Santa Cruz de La Sierra, Bolivia in the name of Grupcor. He also misappropriated Aon Bolivia funds to make rental payments to Grupcor for the La Paz building and to enter into a lease and make lease payments to Grupcor for the Santa Cruz properties.

In order to conceal this misconduct, Contreras made a number of fraudulent representations and omissions to Aon in Illinois, including: (1) sending or causing to be sent to Aon false quarterly financial statements and accounting records for the Bolivian Companies that misrepresented the financial results of the companies and did not accurately reflect the transactions relating to Contreras's self-dealing through Grupcor; (2) sending or causing to be

2

sent communications to Aon seeking approval for a lease with Grupcor for the Santa Cruz property that misrepresented the true owner of Grupcor to be someone other than Contreras or his business partner; (3) failing to disclose in Aon's annual Conflict of Interest Questionnaire that he had an interest in Grupcor or that he violated the Aon Code of Conduct by causing the Bolivian Companies to enter into business transactions with Grupcor; (4) sending or causing to be sent emails to Aon regarding the financial results of Aon Re Bolivia that failed to disclose he underreported Aon Re Bolivian's revenues; and (5) misrepresenting and failing to disclose material information regarding the financials of Aon Re Bolivia in his proposal to purchase that company that he sent to Aon employees in Illinois.

Aon alleges that Contreras owed fiduciary duties directly to Aon as the parent of the wholly-owned Bolivian subsidiaries, and that Contreras's breaches of those duties and fraudulent misrepresentations injured Aon in the following ways:

- Aon was forced to hire an outside firm to engage in a costly investigation and special audit after Aon discovered unexplained payments that Contreras was making to himself;

- Aon lost its ability to conduct reinsurance brokerage business locally in Bolivia because Bolivian regulators permanently revoked Aon Re Bolivia's brokerage license;

- Aon lost substantial value in the Aon Bolivia business because it was impaired by the regulatory sanctions placed on Aon Re Bolivia; and

- Aon was forced to make hundreds of thousands of dollars in capital contributions to Aon Re Bolivia to make up for the shortfall of funds caused by Contreras's misappropriation.

Notably, Contreras does not seek to recover through this action damages in the form of funds misappropriated from the Bolivian Companies; instead, such damages are the subject of separate litigation in Bolivia brought by Aon Bolivia and Aon Re Bolivia.

**DISCUSSION**

As noted above, Contreras raises three arguments for dismissal of this the lawsuit: first, applying the doctrine of *forum non conveniens*; second, citing this Court's purported lack of personal jurisdiction over Contreras; and third contending that Aon lacks prudential standing to pursue its claims. The Court takes each argument in turn.

**I.** *Forum Non Conveniens*

*Forum non conveniens* is a common-law doctrine that "allows a trial court to dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice." *Clerides v. Boeing Co.*, 534 F.3d 623, 627–28 (7th Cir. 2008) (internal quotation marks omitted). A defendant seeking dismissal bears the burden of persuasion on all elements of a *forum non conveniens* claim. *E.g.*, *Gupta v. Austrian Airlines*, 211 F. Supp.2d 1078, 1085 (N.D. Ill. 2002). The defendant must first prove that an alternative forum exists that is both available and adequate to resolve the dispute. *Id.* The Court must then balance a series of private and public interest factors to determine if dismissal is warranted. *See, e.g.*, *Clerides*, 534 F.3d at 628. Private interest factors include "'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that can make trial of a case easy, expeditious, and inexpensive.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Public interest factors include the relative congestion of the courts' dockets, local interest in having localized disputes decided at home, avoidance of the application of foreign law or conflict of law issues, and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* "[T]here is a strong preference for conducting the litigation in the plaintiff's chosen forum, and [] only rare circumstances make honoring this choice inequitable. Unless the balance is strongly in

favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 557 (7th Cir. 2001), as amended July 2, 2001 (internal quotation marks omitted). "Before a court should grant a defendant's motion, the plaintiff's chosen forum must be oppressive and vexatious to the defendant, out of all proportion to the plaintiff's convenience." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005) (internal quotation marks omitted). When the alternative forum is another country, "the choice of a United States forum by a plaintiff who is a citizen of this country should be given" even greater deference. *Wesendorf v. DBH Brokerhaus AG*, No. 04 C 1904, 2004 WL 2872763, at *7 (N.D. Ill. Dec. 13, 2004).

Turning first to the private interest factors,[1] the unavailability of compulsory process to secure the attendance of unwilling witnesses at a trial in this District weighs in favor of dismissing this action. Contreras provides a list of nine individuals residing in Bolivia who he describes as key witnesses in his defense—for example, the former Chief Financial Officer, Chief Operating Officer, accountant, accounts analyst, and legal counsel of the Bolivian Companies, who would testify regarding the companies' finances and reporting.[2] Because these witnesses are no longer employees of the Bolivian Companies and they live in Bolivia, the Court would not be able to require them to appear for trial. If the identified witnesses are indeed unwilling to appear

---

[1] Aon does not dispute Contreras's claim that Bolivia is an available and adequate alternative forum given the ongoing litigation there involving Contreras and the Bolivian Companies.

[2] By separate motion, Aon has moved to strike Contreras's affidavit identifying the key witnesses and documents located in Bolivia because the affidavit was attached to Contreras's reply brief, while his opening brief only referenced Bolivian witnesses and documents without specifically identifying them. (Mot. to Strike, Dkt. No. 39.) The Court declines to strike the information from Contreras's reply brief and affidavit, as the disputed information does not constitute a new argument but rather clarifies a point raised in Contreras's original brief and responds to arguments raised in Aon's opposition brief. *See, e.g., Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134 n.1 (7th Cir. 1996); *Dyson, Inc. v. Sharkninja Operating LLC*, No. 14-cv-00779, 2016 WL 4720019, at *1 (N.D. Ill. Sept. 9, 2016). Aon's motion to strike is therefore denied.

voluntarily,[3] while their videotaped deposition testimony may be introduced at trial, live testimony is preferable in a fraud case so that the factfinder may better assess the demeanor and credibility of witnesses. *See, e.g.*, *ISI Int'l,* 2001 WL 1382572, at *5. Moreover, should Contreras's identified witnesses decide to testify, the time and expense for them to travel in order to attend trial also favors dismissal. *See, e.g.*, *Chelios v. Nat'l Hockey League Players' Ass'n*, No. 06-cv-5333, 2007 WL 178326, at *5 (N.D. Ill. Jan. 18, 2007).

The remaining private interest factors do not favor either forum. With respect to ease of access to documentary evidence, although Contreras identifies documents located in Bolivia that he asserts are key to his defense (including board of directors's minutes, financial statements, and accounting records of the Bolivian Companies and loan and lease documents relating to Grupcor), he provides no explanation or proof of why it would be impossible or even inconvenient to have any such documents sent to Illinois, either electronically or otherwise. Presumably, Contreras will be obligated to turn the documents over to Aon in Illinois during the course of discovery well before any trial in this case. The Court also is not persuaded that the fact that many of the documents are in Spanish presents any significant hurdle, as translation services are readily available. In addition, any inability of Aon to collect a judgment against Contreras in the United States—which Contreras argues weighs in favor of dismissal—is an issue that Aon presumably considered and weighed when choosing to bring this case in Illinois, and the Court does not find it a compelling factor in favor of dismissal. *See also Walpex Trading Co. v. Yacimientos Petroliferos Fiscales Bolivianos*, 712 F. Supp. 383, 393 (S.D.N.Y. 1989) ("While plaintiff may

---

[3] Contreras does not provide any evidence to support his contention that the witnesses would actually be unwilling to testify at trial. *See, e.g.*, *Gupta*, 211 F. Supp. 2d at 1087 (noting that movant failed to identify "any specific witness who refuses to submit to discovery here, and some of these witnesses may be willing to testify here").

well face some difficulty in satisfying a judgment, if it ultimately recovers one from this Court, that uncertainty does not presently rise to a level sufficient to require dismissal.").

The public interest factors favor retaining the case in this forum. Illinois has an interest in having this dispute resolved locally, given that the action is for an injury to Aon in Illinois, not an injury to the Bolivian Companies. As Illinois has a strong interest in providing a forum to redress injury to Illinois corporations, the Court does not find any unfairness to Illinois citizens charged with jury duty in this case.

The remaining public interest factor relevant here[4] is the choice of law and avoidance of application of foreign law. The parties dispute what jurisdiction's law should be applied under Illinois choice-of-law rules—Contreras insists Bolivian law is appropriate, while Aon argues that Illinois and Delaware law will apply to its fraud and fiduciary duty claims, respectively. A federal court sitting in diversity must apply the choice-of-law rules of the state in which it sits. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). For fraud claims, an Illinois court deciding what law to apply would consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation, and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Wilcox v. Incandela*, No. 91 C 5730, 1992 WL 137165, at *4 (N.D. Ill. June 1, 1992). Generally, "the law of the state where the injury occurred applies unless another state has a more significant relationship to the occurrence and parties." *Id*. (citing *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (Ill. 1970)). Aon alleges an injury that occurred in Illinois; the complaint explicitly states that Aon does not seek redress for injuries to

---

[4] Contreras put forward an argument about the relative congestion of the proposed forums' dockets for the first time in his reply. But after Aon moved to strike the argument and corresponding exhibit, Contreras voluntarily withdrew them. Thus, the Court will not consider the argument or exhibit in weighing the relevant public and private interest factors.

the Bolivian Companies. (Compl. ¶ 39, Dkt. No. 1.) The Court therefore finds that Illinois law applies to the fraud claims.

With respect to Aon's fiduciary duty claims, the parties agree that under Illinois choice-of-law rules, this Court should apply the law of the place of incorporation. Contreras argues that this is Bolivian law, as the Bolivian Companies are incorporated in Bolivia. Meanwhile Aon argues for Delaware law, as Aon is alleging breach of fiduciary duties owed to it as the parent company, and Aon is incorporated in Delaware. The Court finds that because the law recognizes fiduciary duties owed directly to a parent in a wholly-owned subsidiary context and Aon indeed alleges breach of fiduciary duties owed directly to it as the parent company, Delaware law applies. *See Brown v. Tenney*, 532 N.E.2d 230, 235 (Ill. 1988) ("Illinois law has long recognized that corporate officers and directors owe a fiduciary relationship towards their corporations and shareholders . . . ."); *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."); 3 Fletcher Cyc. Corp. § 844.30 (2017 ed.) ("A wholly owned subsidiary has only one shareholder, the parent corporation, so there is only one interest to be protected and hence no opportunity for divided loyalties.").

In sum, the public interest factors weigh in favor of retaining the case in this Court. Although the private interest factors—specifically, the possibility of reluctant Bolivian witnesses not being subject to compulsory process, and the time and expense required for willing witnesses to travel to Illinois—weigh toward dismissal, the Court cannot say that, on balance, the public and private interest factors rebut the strong presumption to which Aon's chosen forum is entitled, particularly given that the alternative forum is not domestic. *ISI Int'l*, 256 F.3d at 557; *Wesendorf*,

2004 WL 2872763, at *7 ("[T]he choice of a United States forum by a plaintiff who is a citizen of this country should be given a great amount of deference."); *FMC Corp. v. Varonos*, No. 87 C 9640, 1988 WL 116825, *4 (N.D. Ill. Oct. 21, 1988) ("The doctrine of *forum non conveniens* is not favored where its invocation deprives a United States citizen of potential remedies under United States law in a United States forum."), *aff'd*, *FMC Corp. v. Varonos*, 892 F.2d 1308 (7th Cir. 1990). The Court therefore denies Contreras's motion to dismiss based on the *forum non conveniens* doctrine.

## II. Personal Jurisdiction

The Court next considers Contreras's argument that the Court should dismiss this lawsuit because the Court lacks personal jurisdiction over Contreras. "The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdictional facts." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The Court must accept as true all well-pleaded facts and resolve any factual disputes in favor of the plaintiff. *Id*. For a court sitting in diversity, personal jurisdiction is governed by the law of the forum state—that is, "[t]he court's exercise of jurisdiction over the defendant must be authorized by the terms of the forum state's personal-jurisdiction statute and also must comport with the requirements of the Fourteenth Amendment's Due Process Clause." *Id.* The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause, "so here the state statutory and federal constitutional inquiries merge." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The key question is therefore whether the defendant has "purposely established minimum contacts with the forum state such that he [] 'should reasonably anticipate being haled into court' there." *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

In this case, Aon claims that this Court has specific personal jurisdiction over Contreras. To have specific personal jurisdiction over a defendant, the defendant's contact with the forum state must directly relate to the challenged conduct. *Id*. Put another way, the exercise of "[s]pecific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id*. at 702. Once minimum contacts are established, personal jurisdiction exists unless the defendant makes a "compelling case" that litigating in the forum would violate traditional notions of fair play and substantial justice. *Burger King Corp*, 471 U.S. at 477.

The Seventh Circuit in *Tamburo*, interpreting the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), articulated the following requirements for finding specific personal jurisdiction in an intentional tort context: "(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703 (internal quotation marks omitted). The parties agree that *Tamburo* provides the correct standard, but they disagree on whether the requirements are met here. Contreras argues that the second and third requirements have not been met because the alleged fraud, self-dealing, and misappropriation of assets occurred in Bolivia, and Aon does not allege that the communications between Contreras and Aon enabled or effectuated the alleged fiduciary breach or fraud. If anything, according to Contreras, the alleged intentionally tortious conduct was aimed at Bolivia, while the communications aimed at Illinois merely aided in the concealment of the wrongdoing. Under Contreras's view, that Aon alleges it experienced injury in Illinois is not

enough, as the proper question is whether the defendant's conduct connects him to the forum in a meaningful way. Aon, of course, disagrees.

In *Tamburo*, the Seventh Circuit reconciled its interpretation of *Calder* in *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997), which could arguably be "understood as [interpreting *Calder* to] broadly authoriz[e] personal jurisdiction wherever a tort victim is injured," with its decisions in *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), and *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir.1994), which "read *Calder* to require a forum state injury and 'something more' directed at that state before jurisdiction over a foreign defendant may be considered proper." *Tamburo*, 601 F.3d at 705–06. The *Tamburo* court reasoned that *Janmark's* jurisdictional conclusion was actually "premised on the Illinois-based injury **and** the fact that defendant acted with the purpose of interfering with sales originating in Illinois. Thus, despite its broad language about *Calder*, *Janmark* ultimately considered the relationship between the allegedly tortious conduct and the forum state itself." *Id.* at 706 (emphasis in original). The *Tamburo* court concluded that the *Calder* requirements were met in the case before it, where the defendants were alleged to have used their websites to defame an Illinois-based businessman and encourage readers to boycott his products, with the knowledge that he lived in Illinois and operated his business there. The court concluded that "these defendants specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the brunt of the injury there. These allegations suffice to establish personal jurisdiction over these defendants under either a broad or a more restrictive view of *Calder*." *Id*. (internal quotation marks omitted).

Here, Aon has alleged that Contreras purposefully directed material misrepresentations to Aon in Illinois, including, among other things, false quarterly financial statements and accounting

records for the Bolivian Companies, his response to Aon's annual Conflict of Interest Questionnaire where he misrepresented his lack of conflicts related to his ownership of Grupcor, and communications seeking approval of a lease with Grupcor that misrepresented Grupcor's true owners. (Compl. ¶¶ 19, 36, 44–46, 53–54, Dkt. No. 1.) The complaint further alleges that Contreras expressly aimed his misrepresentations at Aon in Illinois as the parent company, with the intent that Aon would rely on the misrepresentations, in order to conceal and perpetuate his conduct for his continued monetary benefit and to receive approval from Aon for the Grupcor lease. (*Id.* ¶¶ 17, 19, 37.) Finally, the complaint alleges that Contreras acted with knowledge that Aon would rely on the misrepresentations and omissions in carrying out its obligations as the parent company and that he would therefore cause injury to Aon in Illinois. (*Id.*) In short, the tortious conduct that Aon alleges is conduct specifically directed to Aon in Illinois as the parent company (with parent-company obligations including monitoring financial condition and approving lease transactions), with knowledge that the misrepresentations would induce Aon to act (or fail to act), thereby injuring Aon the parent in Illinois. These allegations are sufficient at the motion to dismiss stage to meet both *Tamburo's* enumerated requirements and its less specific "forum-state injury and 'something more'" interpretation of *Calder*. *See Tamburo*, 601 F.3d at 706; *see also FMC Corp. v. Varonos*, 892 F.2d 1308 (7th Cir. 1990) (holding that allegations that defendant sent communications containing material misrepresentations regarding expenditures to plaintiff's Chicago office in furtherance of defendant's scheme to defraud the Illinois company were sufficient to establish specific personal jurisdiction within the "commission of a tortious act within the State" prong of the Illinois long-arm statute).

Contreras's attempt to equate this case to *Young v. Colgate-Palmolive Co.*, 790 F.2d 567 (7th Cir. 1986), and *West Virginia Laborers Pension Trust Fund v. Caspersen*, 829 N.E.2d 843

(Ill. App. Ct. 2005), is unconvincing. *Young* was decided before the Illinois long-arm statute was amended in 1989 to extend the scope of the statute to allow jurisdiction on any basis allowed by the United States Constitution. *Young*, 790 F.2d at 569–70; *see generally FMC Corp.*, 892 F.2d at 1310 n.5 (discussing the 1989 amendment to the Illinois long-arm statute). Thus, the *Young* court was deciding only if it had personal jurisdiction over defendants within the specific contexts provided at that time in the Illinois long-arm statute, which were limited to the transaction of any business within Illinois and the commission of a tortious act within Illinois. *Young*, 790 F.2d 567 at 569–570. The *Young* court concluded that the defendant-corporation's mailings to shareholders, including the plaintiff-shareholder who lived in Illinois, were "not the type of purposeful contacts recognized as the transaction of business under § 2-209(a)(1)," and the alleged breach of fiduciary duties was unrelated to the mailings and therefore the mailings did not constitute the commission of a tortious act within Illinois. *Id*. at 570. The court further held that the fact that the plaintiff lived in Illinois and therefore was injured there was not enough to constitute the commission of a tortious act within Illinois. *Id*. Similarly, the Illinois Appellate Court in *West Virginia Laborers Pension Trust Fund*, "following the decision in *Young*," held that an "injurious consequence in Illinois . . . does not mean that the tort was committed wherever the[] [injured party] reside[s]," reasoning that the plaintiff had alleged only "harm [] felt in Illinois," but not that the "defendants intended to affect an Illinois interest." 829 N.E.2d at 847–48. As previously discussed, Aon here alleges not only that it was injured in Illinois, but also that Contreras intended for the misrepresentations to induce Aon to act (or fail to act) and thereby injure Aon in Illinois.[5]

---

[5] The case before this Court is also different from *Mcllewee v. ADM Industries, Inc.*, 17 F.3d 222 (7th Cir. 1994), cited by Contreras for the proposition that allegations that a defendant failed to disclose information he had a duty to disclose during communications directed at Illinois are insufficient to establish personal jurisdiction. The *Mcllwee* court reasoned that the defendants there had the obligation and opportunity to disclose at all times, not just during telephone conversations with Illinois plaintiffs where the parties discussed business matters generally. *Id*. at 224. The court then held that the plaintiff was also required to

13

The Court's final inquiry is whether Illinois's exercise of personal jurisdiction over Contreras would offend traditional notions of fair play and substantial justice. *Tamburo*, 601 F.3d at 709. In making this determination, the Court considers the following factors: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks omitted). Applying these factors here, the Court finds that exercising personal jurisdiction over Contreras would not offend traditional notions of fair play and substantial justice. Illinois is Aon's home forum, and Aon therefore has a strong interest in obtaining relief here. Moreover, as discussed above, Illinois has a strong interest in providing a forum for its businesses to seek redress for injuries inflicted by out-of-state actors. These factors are not outweighed by any inconvenience to Contreras.

### III.  Prudential Standing

The Court next considers Contreras's argument that the case should be dismissed because Aon lacks prudential standing, as Aon's claimed injury is derivative of the alleged injury to the Bolivian Companies. Federal Rule of Civil Procedure 17(a) requires that every "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). One application of this rule is the "shareholder-standing rule," which dictates that "a shareholder generally cannot sue for indirect harm he suffers as a result of an injury to the corporation." *Rawoof v. Texor*

---

allege facts showing an intent to affect Illinois interests and had not done so. For example, the court reasoned that an Illinois court may have jurisdiction if plaintiff had alleged facts showing that defendants had placed the telephone calls to Illinois for the purpose of furthering their fraudulent scheme affecting plaintiff's stock ownership in Illinois. *Id.* As discussed above, Aon has made such allegations here.

*Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008). Rule 17(a) is a "procedural rule requiring that the complaint be brought in the name of the party . . . who according to the governing substantive law, is entitled to enforce the right." *Id.* at 756 (internal quotation marks omitted). Thus, courts sitting in diversity look to the state substantive law that created the right being sued upon to determine if the action has been instituted by the party possessing the substantive right to relief. *See e.g.*, 6A Fed. Prac. & Proc. Civ. § 1544 (3d ed.). As discussed above, Aon brings its fraud claim under Illinois law and its fiduciary duty claim under Delaware law. In applying the shareholder-standing rule, Illinois and Delaware law is substantively the same. *Compare Tooley v. Donaldson*, 845 A.2d 1031, 1033 (Del. 2004), *with Mann v. Kemper Fin. Co., Inc.*, 618 N.E. 2d 317, 323 (Ill. App. Ct. 1992). Moreover, the parties both argue the prudential standing issue under Delaware law. The Court will therefore also rely on decisions interpreting Delaware law. *See, e.g., Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") (internal quotation marks omitted).

In applying the shareholder-standing rule, courts differentiate between derivative and direct claims. *Tooley*, 845 A.2d at 1033. Where a claim is derivative—that is, the injury occurred to the subsidiary—a shareholder may only sue on behalf of a subsidiary "so that any damages recoverable by the subsidiary would be available not only to the shareholder-parent, as the residual claimant, but also to the subsidiary's creditors." *Case Financial, Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *6 (Del. Ch. Ct. Aug. 21, 2009). To determine whether a claim is direct or derivative, a court looks to "the nature of the wrong and to whom the relief should go"— that is: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the

corporation or the stockholders, individually)?" *Tooley*, 845 A.2d at 1033, 1039. "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id*. at 1039.

Focusing on "the nature of the wrong" alleged by Aon and "to whom the relief should go," *Tooley*, 845 A.2d at 1039, it is clear that Aon's complaint alleges direct fraud and breach of fiduciary duty claims against Contreras. With respect to both claims, Aon has alleged injury unique to Aon as the parent company and separate from the harm to the Bolivian Companies, including the costs to Aon of the investigation and audit and the cost to Aon of losing the ability to conduct reinsurance business in Bolivia. (Compl. ¶¶ 26, 51, 57, 58, Dkt. No. 1.) It is clear that Aon's alleged injury is not derivative of the Bolivian subsidiaries' injuries because to require "that any damages recoverable . . . be available not only to the shareholder-parent, as the residual claimant, but also to the subsidiary's creditors," *Case Fin.*, 2009 WL 2581873, at *6, simply would not make sense. With respect to the fraud claim, Aon further alleges fraudulent misrepresentations and omissions made directly to Aon. Aon thus has standing to pursue the fraud claim directly. *Id.* at *5 ("[Defendant] allegedly perpetrated the fraud on Case Financial [the parent company]-not Case Capital [the subsidiary] . . . . Case Financial has alleged that it suffered a direct injury from the fraud and not an injury suffered solely by virtue of its ownership stake in Case Capital. Thus, Case Financial has standing to pursue the fraud count directly."). With respect to the breach of fiduciary duty claim, Aon alleges that Contreras owed fiduciary duties directly to it as the parent company of the wholly-owned Bolivian Companies. (Compl. ¶ 15, Dkt. No. 1.) This comports with Delaware law. *E.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and wholly-owned subsidiary context, the directors of

the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."). Thus, not only has Aon alleged direct injury independent of any harm to the Bolivian Companies, it has also established that the alleged "duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Tooley,* 845 A.2d at 1039. As a result, Aon has standing to pursue both its breach of fiduciary duty claim and its fraud claim directly.

## CONCLUSION

For the foregoing reasons, Contreras's Motion to Dismiss (Dkt. No. 25) is DENIED. Aon's Motion to Strike (Dkt. No. 39) is also DENIED.

Dated: March 7, 2018

_____
Andrea R. Wood
United States District Judge